IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REYES FLORES and PAT FLORES,

     Plaintiffs,

  vs.                                                                     No. 18-cv-402 WJ/JFR

CITY OF FARMINGTON,
FARMINGTON POLICE DEPARTMENT,
STEVEN HEBBE, in his individual capacity,
NICK BLOOMFIELD, in his individual capacity,
MATTHEW VEITH, in his individual capacity,
TOM SWENK, in his individual capacity, and
TAFT TRACY, in his individual capacity,

     Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART DEFENDANTS' MOTION
FOR PARTIAL DISMISSAL OF THE COMPLAINT**

THIS MATTER comes before the Court upon a Motion for Partial Dismissal of the First Amended Complaint for Failure to state a Claim, Based on Qualified Immunity, filed on June 14, 2019 by Defendants Steven Hebbe, Nick Bloomfield, Matthew Veith, Tom Swenk and Taft Tracy (collectively the "Individual Defendants") and the City of Farmington ("the City") (and collectively, "Defendants") **(Doc. 48)**. Having reviewed the parties' pleadings and the applicable law, the Court grants Defendants' motion in that (1) all of the individual Defendants are entitled to qualified immunity for Counts I, II, III and IV (constituting Plaintiffs' §1983 claims) and (2) Defendant City of Farmington is dismissed from Counts II, III and IV. The motion is denied in that the City of Farmington still remains as a party for Count I.

**BACKGROUND**

This is an employment discrimination case. Plaintiffs Reyes and Pat Flores are brothers. They are both officers with the Farmington Police Department ("FPD") and claim that Defendants subjected them to discrimination and retaliation at work because of their religious beliefs. Defendants seek to dismiss Counts I, II, III and IV of the Amended Complaint (Doc. 35) on the basis of qualified immunity for the individual defendants and also because the Amended Complaint (or "complaint" for purposes of this opinion) does not specify the wrongdoing of each Defendant.

**I.    Factual Background**

Both Plaintiffs claim that they have "long held deep-rooted Christian beliefs." The Farmington Police Department ("FPD") and employees were aware of their Christian faith, and many people in FPD also held similar beliefs. Plaintiffs allege that they suffered adverse employment actions including but not limited to hostile work environment, unfair discipline, failure to promote, and loss of pay benefits. The individual Defendants appear to be employees of the FPD or the City of Farmington.

    A.    <u>Plaintiff Reyes Flores ("Reyes")</u>

Reyes served a number of years on the SWAT team and during his career had also performed duties as an ethics instructor and field training officer (FTO).

On September 6, 2016, Defendant Veith notified Plaintiff Reyes that an Internal Affairs ("IA") investigation had been initiated against him. The notice did not provide any details on the allegations or alleged violations. On September 21, 2016, Lt. Crum notified Reyes that he was being transferred from the training division to the patrol division pending the results of the investigation. As part of the internal investigation, Defendant Veith interviewed Reyes at least four

times, during which he referenced Reyes' religious beliefs, the expression of those beliefs in the work place, and the inappropriateness of sharing those religious beliefs in the workplace. Plaintiff Reyes led certain trainings as a Field Officer Trainer. Plaintiff Reyes believed he was being accused of forcing religious beliefs on his trainees or subordinates while in the workplace. The internal affairs investigation disclosed that Reyes did not force, coerce, compel, or require any department employee to follow his religious beliefs, but concluded that Reyes engaged in discriminatory conversations with trainees and subordinates. On November 15 2016, Reyes was presented with the proposed discipline as a result of the investigation, which included: (1) removal from his training position and revocation of his Field Officer Trainer status; (2) removal from the SWAT team; (3) a written reprimand (4) and other discipline. Plaintiff Reyes filed a grievance. The discipline was subsequently reduced to counseling. Plaintiff Reyes continued to pursue his grievance but was not successful. He alleges he has been denied subsequent opportunities based on this discipline and subsequently received the worst performance evaluation of his career.

B. Plaintiff Pat Flores ("Pat")

Plaintiff Pat Flores was promoted to sergeant in January 2010. He has been applying for lieutenant positions since 2014. He alleges that other less qualified candidates, including ones he trained, were selected over him four times. On June 27, 2017, Pat had a feedback session with Defendant Tracy. Defendant Tracy allegedly told Pat that although his qualifications were better than those selected based on training and experience, he was not promoted because of his perceived strong religious beliefs and he would not be promoted unless he surrendered those beliefs.

II. Procedural Background

The initial complaint contained fourteen counts, consisting of various federal civil rights violations and state law claims. On August 3, 2018, Defendants moved to dismiss all of Plaintiffs'

§1983 claims (Counts I, II, III, IV and V); portions of Plaintiffs' Title VII claims (Counts VI, VII and VIII); and portions of the claims brought under the New Mexico Human Rights Act, NMHRA §28-1-7(A) (Counts IX, X, XI). The Court granted Defendants' request in part, dismissing Counts I-III in the initial complaint, with leave to amend. Doc. 35. The Court agreed with Defendants that Plaintiffs "failed to specify which claims each defendant is alleged to have committed" and so it was "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." Doc. 33 at 6. The Court also stated that it could not "conduct a qualified immunity analysis because it was unclear what actions are alleged to have violated which constitutional right." *Id.* at 7. Plaintiffs were allowed to amend and re-file the complaint specifying "which facts support inclusion of a particular Defendant" under each claim or count. *Id.*

Plaintiffs filed a First Amended Complaint ("Amended Complaint") on March 4, 2019 (Doc. 35) which includes a paragraph at the end of each count which purportedly lists all the facts alleged in the complaint linking each defendant with each claim. Defendants contend that Plaintiff's amendment has still not cured the defects in the complaint and now seek dismissal of Counts I, II, III and IV based on qualified immunity of the individual defendants and because the Amended Complaint does not specify the wrongdoing of each Defendant:[1]

Count I: First Amendment (§1983);

Count II: Equal Protection / Hostile Work Environment (§1983)

Count III: Procedural Due Process Under the Fourteenth Amendment (§1983); and

Count IV: Equal Protection / Religious Discrimination Under Fourteenth Amendment (§1983).

---

[1] Defendants' instant motion focuses on Plaintiffs' §1983 claims asserted in Counts I, II, III and IV, and does not seek relief on any of the other counts discussed in Defendants' previous motion to dismiss.

**III.     Legal Standard: Qualified Immunity on a Motion to Dismiss**

In considering (reviewing) a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court "accept[s] as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation and internal quotation omitted). "To survive [dismissal,] a complaint must contain enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants raise the defense of qualified immunity. This defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to show that the law and facts at issue establish that qualified immunity does not apply. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994). The plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010).

The Tenth Circuit has held that a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts holds that such a right exists." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). If there is no previous decision that is "materially factually similar or identical to the present case," then "the contours of the right must be sufficiently clear that a reasonable official would

understand what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) ("The essential inquiry is whether an objectively reasonable official have known that his conduct was unlawful."). This is a "'heavy, two-part burden'" that must be met by a plaintiff. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted). If the plaintiff does not meet this heavy burden, then the government official is "properly spared the burden and expense of proceeding any further," and should be granted qualified immunity.

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, under the *Iqbal-Twombly* standard. *See Shero v. City of Grove*, Okl., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged in a complaint "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).[2]

## DISCUSSION

Defendants contend that Plaintiffs still fail to link the individual Defendants' acts to violations of clearly established constitutional rights. In its previous opinion dismissing Counts I, II and III without prejudice, the Court required that for each claim in the Amended Complaint,

---

[2] Under Rule 12(b), a defendant may file *either* an answer or a pre-answer motion raising Rule 12(b) defenses. Because Defendant filed an Answer (Doc. 36) before filing this motion (Doc. 48), the Court will treat the instant motion as a motion for Judgment on the Pleadings, which is treated the same as a motion to dismiss under Rule 12(b)(6). *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir.2009).

Plaintiffs should identify which Defendants they assert that claim against, and identify which facts support inclusion of a particular Defendant. Doc. 33 at 7. At the end of each claim in the Amended Complaint, Plaintiffs include a paragraph listing specific factual paragraphs for each individual Defendant linking that Defendant to the count. For purposes of this discussion, the Court assumes that the facts added in the last paragraph of Count I (¶94) apply to all Defendants.[3]

## I. First Amendment Claim: Count I

Plaintiffs claim that their exercise of free speech resulted in various employment actions taken against them, including unjustified disciplinary actions, failures to promote and hostile work environments. They allege that they in exercising their free speech rights, they were speaking out "on matters of public concern" that are "incorporated into federal and state statutes and laws as matters of public concern requiring mediation and resolution." *Id.*, ¶84.

Plaintiff Reyes claims that he exercised his First Amendment rights of free speech by raising matters related to character qualities and religious beliefs "in the context of questions and inquiries from other FPD employees. Am. Compl., ¶81. He states that he "often spoke out on issues related to character, ethics, morals, religion, and a number of other matters related to the proper comportment and responses of FPD officers when in public." *Id.*, ¶79. The Amended Complaint does not offer many facts pertaining to Pat's "speech." Plaintiffs allege that "Pat had well-recognized and well-respected religious beliefs, at least among the majority of FPD employees" and that these employees knew "that Reyes and Pat shared their religious beliefs, concluded and assumed that Pat held the same beliefs as Reyes." Am. Compl., ¶ 80.

---

[3] Defendants note that Bloomfield is not included in any of the facts pertaining to a First Amendment violation. *See* Doc. 48 at 2, ¶6.

A. Relevant Law

A public employer's disciplining of an employee violates the First Amendment "only if it is in retaliation for the employee's speech on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 663 (1994) (citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 572 (1968)). First Amendment claims are analyzed under the *Garcetti/Pickering* test, which consists of five steps:

(1) whether the speech was made pursuant to an employee's official duties;

(2) whether the speech was on a matter of public concern;

(3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

(4) whether the protected speech was a motivating factor in the adverse employment action; and

(5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

The first three steps concern questions of law for the courts, and the last two concern questions of fact. *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221–22 (10th Cir. 2017); *see Garcetti*, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). To prevail, a plaintiff must establish all five elements. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007).

B. Whether Law Was Clearly Established – Plaintiff Reyes

Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009); *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). The Court's inquiry here will begin and end with whether Plaintiffs have identified some clearly established law that was sufficiently clear at the time so that the individual Defendants would have known that they were

violating Plaintiffs' constitutional rights. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (a clearly established right "is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right").

Defendants contend that there are no Supreme Court or Tenth Circuit decisions on point, nor is there a weight of authority from other courts supporting Plaintiffs' contention that Defendants violated their clearly delineated First Amendment right. Plaintiffs disagree, but rely on cases that have nothing to do with religious speech in the workplace or are not even remotely related to the allegations in this case. For example, Plaintiffs cite to *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001), which is not even an employment case. That case addressed a school's exclusion of Christian children's club from meeting after hours at school based on its religious nature was unconstitutional viewpoint discrimination. Plaintiffs also cite to *Fischer v. Forestwood Co.*, 525 F.3d 972 (10th Cir. 2008), and to *Sprague v. Adventures, Inc.*, 121 F. App'x 813, 815 (10th Cir. 2005), an unpublished Tenth Circuit case, both of which allege only Title VII claims.[4]

The United States Supreme Court has "repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). Framing what is "clearly established law" requires a "high degree" of specificity, with the Court ordinarily accepting plaintiff's version of the facts as long as those facts are supported in the record. *Id.* In this case, the facts alleged in the Amended

---

[4] The defense of qualified immunity is not available in Title VII actions because such actions are directed against the employer, and not individual defendants. The Tenth Circuit has made it clear that individual defendants have no Title VII liability. *See Redpath v. City of Overland Park*, 857 F. Supp. 1448, 1456 (D. Kan. 1994) (citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993) and *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (if state officers could be sued individually under Title VII, they would receive qualified immunity).

9

Complaint must form the basis in a search for "clearly established" law. The cases offered by Plaintiffs do not adequately address the particular circumstances of this case as required under the Supreme Court's directive. These are the allegations in this case pertinent to Count I:

- The IA investigation was an inquiry into whether Reyes had tried to impose his religious beliefs on trainees. Am. Compl, ¶31 ("The IA investigation spiraled down in a general disagreement and conflict over Reyes religious beliefs and whether he had tried to impose those beliefs on trainees."). Defendant Veith interviewed Reyes "at least four times." Am. Compl., ¶28.

- The results of the IA investigation found that Reyes had engaged in discriminatory conversations with trainees and subordinates. *Id.,* ¶36. Reyes was removed from his training position; ineligible for bidding for a position in a specialty unit for one year; removed from the SWAT team; and given a written reprimand. Am. Compl., ¶36, 38.

- Complaining subordinates stated that they never opposed Reyes' alleged comments because they feared retaliation – *Id.,* ¶38. The investigation was carried out to determine whether "Reyes had used his personal views and lifestyle as an example of ethical behavior which caused offense to subordinates." -*Id.*

The Court's research has not unearthed any decisions on point to suggest that Defendants' actions violated Plaintiffs' clearly established rights under the First Amendment and so the Court concludes that the law was not clearly established on more than one of the First Amendment elements. To begin with, the law is not clear that Reyes engaged in protected speech. According to the complaint, Reyes incorporated his religious beliefs into the training he offered his subordinates while at work by speaking out on issues "related to character, ethics, morals, religion, and a number of other matters related to the proper comportment and responses of FPD officers when in public." Plaintiffs point to no weight of authority or Tenth Circuit precedent that such speech is protected.

Second, it is not clearly established that Reyes' free speech interests outweighed the FPD's interests in promoting the efficiency of public service. The only public employer interest that outweighs the employee's free speech interest is "avoiding direct disruption, *by the speech itself,*

10

of the public employer's internal operations and employment relationships." *Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014) (quoting *Flanagan v. Munger,* 890 F.2d 1557, 1566 (10th Cir.1989) (emphasis in original).

Defendants offer a Seventh Circuit case which favors Defendants' position regarding the employer's right to restrict religious speech in the workplace. In *Piggee v. Carl Sandburg College*, the plaintiff claimed that her First Amendment rights were violated when her contract was not renewed after she handed out to a gay student two religious pamphlets on the sinfulness of homosexuality. 464 F.3d 667 (7th Cir. 2006). The Seventh Circuit framed the "real question" as whether the college had the right to insist that plaintiff refrain from engaging in that particular speech while serving as an instructor of cosmetology. *Id.* at 671. Assuming without deciding that plaintiff's proselytizing was speech that constituted a matter of public concern, the court held that the college reasonably took the position that discussions of religion not germane to classroom curricula had no place in the classroom and that plaintiff's constitutional rights were not violated by the college's insisting that plaintiff refrain from engaging in speech related to her religious beliefs regarding homosexuality. *Id.* at 672. *Piggee* involved a summary judgment motion rather than a motion to dismiss and the employment setting was a cosmetology school rather than police department, but the situation in *Piggee* is more similar than dissimilar: in both cases, plaintiffs injected their religious beliefs into workplace discussions and in both cases there is the question of whether a public employer's interest outweighs an employee's free speech interest.

Plaintiffs, on the other hand, offer no Tenth Circuit case or weight of authority from other circuits to counter *Piggee* and which would preclude a finding of qualified immunity for the individual Defendants. The complaint states that that Reyes was told that subordinates took offense at his use of his personal views at the workplace and that they feared retaliation if they opposed

Reyes. Am. Compl., ¶38. Plaintiffs point to no case holding that an employee's free speech interests outweighs an employer's right to investigate complaints by subordinates about that employee's verbal expression of religious views in the workplace.

Third and last, the Court finds that the law was also not clearly established that Defendants violated Plaintiffs' First Amendment rights by their actions, starting with conducting an investigation into Reyes' workplace behavior regarding his conversations with trainees and subordinates about his religious beliefs. Plaintiffs point to no decision from any circuit finding that an employer would be violating an employee's clearly established First Amendment rights by carrying out an investigation into the appropriateness of such conduct in the workplace. As a result, Defendants are entitled to qualified immunity on Reyes' First Amendment claim. Moreover, because the alleged adverse employment actions were the results of the investigation, Defendants would not have known that taking those actions violated Reyes' clearly established First Amendment rights. *Cmp.Lincoln v. Maketa*, 880 F.3d 533, 539 (10th Cir. 2018) (not clearly established that criminal investigation is adverse employment action).

Since a plaintiff must satisfy all the elements in a First Amendment analysis, Defendants are entitled to qualified immunity on the "clearly established" prong of the analysis with regard to Plaintiff Reyes.

C.  Whether Law Was Clearly Established – Plaintiff Pat

The Court previously ordered Plaintiffs to specify "whether all five individual Defendants are alleged to have committed all alleged §1983 claims against *each* Plaintiff." Doc. 33 at 6 (emphasis added). However, even after having had the chance to amend the complaint, it still remains a mystery as to how any of the individual defendants allegedly violated Plaintiff Pat's First Amendment rights—except perhaps for Defendant Tracy. The Amended Complaint alleges

that Pat was passed over for the lieutenant position because of his "strong beliefs about religion, family and marriage" and that Defendant Tracy told Pat that if he expected to be promoted within the FPD that he would have to "let go of some of his personal beliefs." Am. Compl., ¶¶72, 73. Therefore, the Court finds that Plaintiff Pat fails to allege a claim against any of the other individual defendants.

The complaint does not state whether Pat was also investigated. It mentions both brothers' "exercise of their free speech rights" but does not describe what "protected speech," if any, Pat is alleged to have made. Assuming that Pat engaged in such speech, the question in a qualified immunity analysis is whether Defendant Tracy would have known, under clearly established law, that the statements Defendant Tracy made to Pat violated Pat's First Amendment rights.[5] According to the Amended Complaint, there was a concern at the FPD that Pat's strong religious beliefs were inappropriate in the workplace. *See, e.g.,* Am. Compl., ¶53 (FPD Deputy Chief Noon "referenced Reyes' brother Pat and stated that he did not like how Pat shared his Christian beliefs with Noon."). Plaintiffs present no Tenth Circuit precedent nor cases from other circuits which suggest that Tracy's statement to Pat—that he would have to "let go of some of his personal beliefs" if he wanted to be promoted, in the context of the facts in the complaint—violated Pat's clearly established constitutional rights.

For the above reasons, the individual Defendants are entitled to qualified immunity on Plaintiffs' First Amendment claim asserted in Count I of the Amended Complaint.

## II.     Procedural Due Process Claims – Count III

---

[5] In their brief, Defendants contend they are entitled to qualified immunity because the law was not clearly established at the time that they were violating Plaintiffs' First Amendment rights. They do not present an argument that either Plaintiff has failed to allege a plausible claim, nor do they parse out the qualified immunity analysis they do present according to each Plaintiff. The Court will therefore consider only the basis for relief requested by counsel on the "clearly established" prong of the analysis. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n. 13 (10th Cir.1999) (observing that this court "will not craft a party's arguments for him").

At the end of Count III, Plaintiffs allege that Defendants Hebbe, Veith, Swenk and Tracy violated their Fourteenth Amendment procedural due process rights. The complaint is unclear as to whether the alleged violations pertain to the process regarding the November 2016 investigation or the alleged adverse employment actions which followed.

To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process. *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011). Assuming that Plaintiffs possessed such a protected interest, they would have been entitled to the minimum due process protections, which is "some kind of notice and . . . some kind of hearing." *Goss v. Lopez,* 419 U.S. 565, 579 (1975).

Plaintiffs do not challenge the policies available to them. *See* Am. Compl., ¶47 ("There is no dispute that Reyes was disciplined on the basis of the following City and FPD rules, regulations, laws, and policies: the City's Personnel Rule 21-7-1(1), (14), (22), and (23), FPD Policy 1.01, the City's Personnel Rule 21-1-7 (a), (b), (c), and (d), NMHRA 28-1-7, and the First Amendment of the United States Constitution."). Instead, they claim that they "had no opportunities to be meaningfully heard with respect to the allegations brought against them during the Departmental investigation conducted by the FPD" and that "Pat never had any opportunity to contest the unlawful failures to promote he was subjected to." Am. Compl., ¶114. Plaintiffs assert the following facts regarding Defendants Hebbe, Veith, Swenk and Tracy for Count III:

*Hebbe:* The complaint states that Reyes submitted a grievance after receiving a written reprimand and the corresponding adverse employment actions resulting from the investigation. Chief Hebbe ("Hebbe") responded to the grievance submission by stating (a) that Reyes was

14

prohibited from having personal conversations with trainees of a personal nature; (b) that the investigation supported disciplinary action; and (c) that Reyes' grievance was not grievable under the Farmington city code. On December 22, 2016, Hebbe reduced the proposed discipline to a recommendation for Counseling, as a "ploy" to avoid the grievance procedure . . . with the result that Reyes would be absolved of any wrong-doing." ¶¶42-46.

*Swenk:* Tom Swenke disagreed with Hebbe about the availability of the grievance procedure, and he advised Reyes on December 19, 2016 that Reyes' grievance "was indeed grievable under the City's rules and regulations." ¶¶43-44.

*Veith:* Defendant Matthew Veith "(Veith)" notified Reyes on September 6, 2016, that an IA investigation had been initiated against him. ¶23. The complaint alleges that in response to Reyes' request for clarification on the charges, Veith responded that the investigation would implicate "the entirety of FPD policies as well as city regulations," specifically referencing the sexual harassment policies of the City which also encompassed hostile work environment. Veith interviewed Reyes at least four times and allegedly was "convinced that Reyes had improperly forced religious beliefs on trainees or subordinates while in the workplace." ¶¶28-29. Plaintiffs assert that Veith, along with the other individual Defendants, denied Plaintiffs due process by "deciding to take adverse" action against Reyes. Am. Comp., ¶ 120.

*Tracy:* Defendant Taft Tracy ("Tracy"): as mentioned above, Tracy told Pat that if he expected to be promoted, he would have to "let go of some of his personal beliefs." ¶73. Tracy mentioned a gay pride parade in Farmington as an example, commenting that Pat would be unwilling to march in such a parade because of his religious beliefs. ¶71.

The individual Defendants are entitled to qualified immunity on Count III on the first prong of the qualified immunity analysis because the complaint does not sufficiently allege the violation

of a constitutional or statutory right. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). The allegations are still insufficient to assert a procedural due process claim against any of the individual Defendants. Defendant Hebbe's incorrect assumption about the availability of the grievance process and the reduction of discipline to a Counseling does not form the basis for a procedural due process claim. Plaintiffs oppose the outcome of the investigation conducted by Defendant Veith, but there is no allegation that they challenge the *process* used by Veith. Plaintiffs' sole reference to Defendant Swenk is that Swenk advised Reyes correctly about the availability of the grievance procedure, which does not by any stretch constitute a procedural due process claim. Plaintiffs barely mention Defendant Nick Bloomfield in passing as part of a collective allegation that the individual Defendants decided to take "adverse employment actions against Reyes and Pat . . . . Am. Compl., ¶120. This allegation is clearly insufficient to state a claim against Bloomfield.

Plaintiffs claim that they had no "opportunities to be meaningfully heard with respect to the allegations brought against them" during the investigation, *see* Am. Compl., ¶114, but the actual facts alleged say otherwise:

> Although the FPD went to great efforts to gather information against Reyes, the City and FPD discounted out-of-hand any explanation and **evidence provided by Reyes to contest the claims made against him.** Am. Compl., ¶114 (emphasis added).
>
> It is clear from Veith's questioning of Reyes that he was convinced that Reyes had improperly forced religious beliefs on trainees or subordinates while in the workplace. Veith obviously held this attitude prior to initiating the investigation and **refused to allow the evidence gathered during the investigation to change that opinion.** Am. Compl., ¶29 (emphasis added).

These allegations belie Reyes' claim that he had no opportunity to present his side of the situation or present any evidence. Again, Reyes takes issue with the result of the investigation rather than the process and so does not allege a plausible procedural due process claim. Pat also

16

fails to allege a claim in Count III, as the complaint is silent about an investigation regarding Pat's workplace conduct and Pat challenges the failure to promote decisions that were made rather than any process used to arrive at those decisions.

Defendants also contend that Plaintiffs waived their right to bring a procedural due process claim when they failed to take advantage of procedures to pursue that claim. *See Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas,* 869 F.2d 555, 557 (10th Cir. 1989). Specifically, they argue that Plaintiffs did not pursue an appeal to state district court to challenge any of Defendants' actions under NMRA 1-075 which provides for constitutional review of administrative decisions and orders by a district court. However, that rule applies only to reviews from administrative agencies when a statutory right for review exists, *see* NMRA 1-074, and Defendants do not provide information on whether such a statutory right was available to Plaintiffs. Therefore, the Court need not consider this argument further, and finds that Plaintiffs have not alleged a plausible procedural due process claim against the individual Defendants. As a result, Defendants are entitled to qualified immunity.

### III. Equal Protection Claims – Counts II and IV

Plaintiffs claim that they were subjected to a hostile work environment and religious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (Counts II and IV, respectively).

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004). It is triggered "when the government treats someone differently than another who is similarly situated." *Id.* A plaintiff pursuing an Equal Protection claim must show that at similarly situated persons were treated differently. *Id.* (comparison to others similarly situated

17

"distinguishes the Equal Protection Clause from the Due Process Clause") (citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)).

Counts II and IV in the Amended Complaint can best be described as a mixed bag of civil rights lexicon, but certainly not as Equal Protection claims. There are references to disparate treatment (¶97); intentional harassment and punishment on the bases of protected speech and religious belief (¶98); discriminatory and retaliatory animus (¶128); and pretextual conduct for unlawful religious discrimination prohibited by Title VII and Fourteenth Amendment. Count III states that "[w]hen compared with other the City and FPD employees, Reyes and Pat were treated differently and deprived of workplace considerations and benefits freely given to others. Am. Compl. ¶100. However, nowhere in the Amended Complaint is it alleged that any similarly situated non-Christian was permitted to discuss his or her religious views at the workplace without being investigated or disciplined—and this dooms Plaintiffs' Equal Protection claims. *Cmp. Piggee*, 464 F.3d at 674 (2006) (finding no merit in plaintiff's equal protection arguments where plaintiff had not pointed to any similarly situated non-Christian employee who was permitted to discuss religion or homosexuality in the clinic).

Plaintiff's counsel has now had the benefit of two opportunities to craft a complaint which clearly and accurately asserts the legal bases for various civil rights claims. The Court has no intention of construing the complaint to contain either facts or legal assertions which are not there, and hereby finds that Plaintiffs have not alleged a plausible Equal Protection claims in either Count II or Count IV. The individual Defendants are therefore entitled to qualified immunity on the basis that Plaintiffs have not sufficiently alleged a constitutional right.

**IV.  Dismissal of Entities**

Defendants contends that if the individual Defendants are dismissed from the case on the basis of qualified immunity, then the §1983 claims in Counts I-IV should also be dismissed against the City.[6]

Municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir.1999). However, suit against an entity (such as the City of Farmington here) may proceed if finding of qualified immunity is predicated upon a determination that the law was not clearly established:

> When a finding of qualified immunity is predicated on the basis that the law is not clearly established, it is indeed correct that "there is nothing anomalous about allowing [a suit against a municipality] to proceed when immunity shields the individual defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred."

*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 783 (10th Cir. 1993).

For Plaintiffs' First Amendment claim in Count I the Court found that Defendants are entitled to qualified immunity because the law was not clearly established at the relevant time, and thus this claim may proceed against the City. For Plaintiffs' procedural due process claim in Count III and Equal Protection claims in Counts II and IV, the Court found that Defendants are entitled

---

[6] Defendants seek dismissal of the City, but not FPD. This is not necessarily incorrect, since as a local governmental entity, FPD is not a suable entity for purposes of §1983. *See Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. 1992) (unpublished table decision) (police departments "are not suable entities under § 1983, because they lack legal identities apart from the municipality"); *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 n.1 (10th Cir. 2002) (unpublished) ("The district court properly relied on an unpublished decision from this court holding that the Albuquerque Police Department lacks a legal identity apart from the City of Albuquerque") (citing *Ketchum*); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D.N.M. 2014) ("Because the APD is merely a department of the City of Albuquerque, it is not a proper party and cannot be held liable for the Young's §1983 claims"); *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (' 1983 claims dismissed because city of Denver Police Department not a separate suable entity); *see also Stump v. Gates*, 777 F.Supp. 808, 816 (D.Colo. 1991) (local government departments have no greater separate identity from cities than do their officials when they are acting in their official capacities (citing *Brandon v. Holt*, 469 U.S. 464, 472 and n.221 (1985)).

to qualified immunity because Plaintiffs failed to allege a viable constitutional claim, and on that basis the City will be dismissed from the lawsuit on Counts II, III and IV.

## CONCLUSION

In sum, the Court finds and concludes that:

(1) the individual Defendants are entitled to qualified immunity on Plaintiffs' First Amendment claim in Count I on the grounds that the law was not clearly established at the relevant time;

(2) the individual Defendants are entitled to qualified immunity on Plaintiffs' procedural due process claims in Count III and the Equal Protection claims in Counts II and IV on the grounds that Plaintiffs failed to allege a plausible claim;

(3) The City of Farmington is dismissed as a party on Counts II, III and IV, but remains as a party for Count I.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Dismissal of the First Amended Complaint for Failure to state a Claim, Based on Qualified Immunity **(Doc. 48)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order, in that:

(1) all of the individual Defendants are entitled to qualified immunity for Counts I, II, III and IV (constituting the entirety of Plaintiffs' §1983 claims) and

(2) Defendant City of Farmington is dismissed from Counts II, III and IV.

Defendants' motion is DENIED in that Defendant City of Farmington remains as a party for Count I.

_____
CHIEF UNITED STATES DISTRICT JUDGE