# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

REYES FLORES, and
PAT FLORES,

        Plaintiffs,

     vs.                                  Case No.  1:18-cv-00402-KWR-JFR

CITY OF FARMINGTON,
STEVEN HEBBE, NICK BLOOMFIELD,
MATTHEW VEITH, TOM SWENK, and
TAFT TRACY, *all in their individual capacities*,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court upon the Defendants' Motion for Judgment on the Pleadings against Pat Flores (**Doc. 88**), and Defendants' Motion for Summary Judgment (**Doc. 108**) as to Pat Flores.  Having reviewed the parties' pleadings and the relevant law, the Court finds that Defendants' motions are well-taken in part and, therefore, are **GRANTED IN PART.** Plaintiff Pat Flores' remaining claims are dismissed.

## BACKGROUND

Plaintiff Pat Flores has been applying for lieutenant positions since 2014.  He alleges that other less qualified candidates were selected over him multiple times.  Following his fourth attempt at promotion, Plaintiff had a feedback session with Defendant Tracy.  Plaintiff alleges that Defendant Tracy told him that he was not promoted because of his perceived strong personal beliefs.  This alleged statement forms the basis for Plaintiff's claims.

In an amended complaint (**Doc.  35**), Plaintiffs asserted the following fourteen claims:

Count I: 42 U.S.C. § 1983: First Amendment Retaliation.
Count II: 42 U.S.C. § 1983: Fourteen Amendment Equal Protection / Hostile Work
    Environment.
Count III: 42 U.S.C. § 1983: Fourteen Amendment / Procedural Due process.
Count IV: 42 U.S.C. § 1983: Fourteenth Amendment Equal Protection / Religious
    Discrimination.
Count V: Title VII: Religious Discrimination.
Count VI: Title VII: Retaliation.
Count VII: Title VII: Hostile Work Environment.
Count VIII: New Mexico Human Rights Act: Religious Discrimination.
Count IX: New Mexico Human Rights Act: Retaliation.
Count X: New Mexico Human Rights Act: Hostile Work Environment.
Count XI: Breach of an Implied Contract of Employment.
Count XII: Breach of the Implied Covenant of Good Faith and Fair dealing.
Count XIII: Violation of New Mexico Whistleblower Protection Act.

These claims have been the subject of several dispositive motions.  Currently, the following

claims remain as to Plaintiff Pat Flores:

Count I:  Section 1983 First Amendment Retaliation.
Count V: Title VII: Religious Discrimination.
Count VI: Title VII: Retaliation.
Count VII: Title VII: Hostile Work Environment.
Count VIII: New Mexico Human Rights Act: Religious Discrimination.
Count IX: New Mexico Human Rights Act: Retaliation.
Count X: New Mexico Human Rights Act: Hostile Work Environment.
Count XI: Breach of an Implied Contract of Employment.
Count XII: Breach of the Implied Covenant of Good Faith and Fair dealing.
Count XIII: Violation of New Mexico Whistleblower Protection Act.

This case was transferred to the undersigned in early 2020.   In the current motions

Defendant seek dismissal or judgment on the remaining claims asserted by Plaintiff Pat Flores.

## FACTS

Plaintiff is currently a sergeant with the Farmington Police Department.  He entered the

police academy in January 2002 and was promoted to corporal in 2007.  He was selected for a

sergeant position in 2014.  Subsequently for a three-year period Plaintiff taught at the training

academy and became the director of the training academy.  That post came with a stipend.  He

taught perceptions of human behavior, ethics, and law.  When the three year term was over, Chief

Hebbe denied Plaintiff's request to remain at the academy for an additional year. Lt. Tafoya placed him on patrol in 2018 and told him he needed to "get back in touch with [his] roots." **Doc. 108-1 at 126.** Upon leaving the academy, Plaintiff was no longer entitled to a training stipend.

Plaintiff applied for a promotion to lieutenant five times, beginning in 2014. Plaintiff believed the first three promotional processes were fair and his religion was not considered.

Plaintiff asserts that he has had conversations with coworkers about religion. Plaintiff believes that "God designed and created males and females, and he didn't make mistakes", that "God designed one man, one woman, and a monogamous marriage relationship" and that absolutely any "other sexual encounters are wrong." **Doc. 108 at 4, UMF 16.**

At issue in this case is the 2017 promotional process. Applicants for lieutenant, including Plaintiff, were interview by a mixed panel consisting of community members and department leadership. Another panel of Plaintiff's peers also interviewed and evaluated applicants. **Doc. 126 at 1.** The panel asked the same questions of all applicants. **Doc. 126 at ¶ 6-7.**

The record includes copies of the questions asked and their notes on Plaintiff's answers. **Doc. 126.** The committee also used standardized forms to score each applicant according to various criteria categories. The scores were tallied and the candidates were ranked. Chief Hebbe then interviewed all applicant using a set list of questions. **Doc. 126 at ¶ 12, Ex. H.**

Chief Hebbe selected Chad Byers and Sierra Tafoya for promotion to lieutenant. **Doc. 126 at 2**. Tafoya and Byers were ranked number 1 and 4 in overall score and were ranked higher than Plaintiff by both the peer and mixed panels. **Doc. 126, Ex. G.** Plaintiff was ranked sixth out of seven. ***Id.***

After he was not selected for the promotion in 2017, he had a feedback session with Cpt. Baric Crum and Cpt. Taft Tracy.  Plaintiff agreed with some of the feedback but disagreed with Cpt. Tracy's statement that his personal beliefs were too strong to be promoted.

Plaintiff testified that during the feedback session Cpt. Tracy said that Plaintiff and his "brother Reyes, had very strong beliefs about marriage and religion and family and those were good, but they were too strong, and as a result – the specific example he gave out, of – I don't know where it came from – was that,  if given the opportunity to walk in a Gay Pride Parade I would not do it." **Doc. 108 at 4 UMF 15, citing Doc. 108-1 at 84-85.**  The record reflects that this may have been Cpt. Tracy's personal opinion, but nothing connects it to Chief Hebbe.  **Doc. 108, Ex. C, at 58:14-21** (Cpt. Tracy testified that "there are times when you are a lieutenant that you have to do things that may be against your personal beliefs but you still do it…I didn't feel like he had the willingness necessarily to want to do that.").

Plaintiff believed that Chief Hebbe discriminated against him because Cpt. Tracy was the Chief's designee, although Plaintiff never talked to Chief Hebbe about the feedback session. Plaintiff did not explain the basis for his belief that Cpt. Tracy was the Chief's designee.  There was nothing in the record that Cpt. Tracy was a final policymaker or that Chief Hebbe ratified Cpt. Tracy's statements.  Chief Hebbe was responsible for promotion decisions.  **Doc. 125 at 3.**

Chief Hebbe testified he did not believe that Pat's religious beliefs were "too strong".  **Doc. 125-1 at 107:6-9.**  Chief Hebbe testified at length about several issues with Plaintiff's leadership ability and prior leadership decisions, discussed in detail below.  **Doc. 126-1, Ex. A, at 110:10 to 116:11.**

## LEGAL STANDARD

I.     **Standard for Motions for judgment on the pleadings.**

4

A motion for judgment on the pleadings is generally analyzed through Rule 12(b)(6) standards. Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## II.   Summary Judgment Standards.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts

showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

## DISCUSSION

Defendants seek summary judgment the following remaining claims:

Count I:  Section 1983 First Amendment Retaliation.
Count V: Title VII: Religious Discrimination.
Count VI: Title VII: Retaliation.
Count VII: Title VII: Hostile Work Environment.
Count VIII: New Mexico Human Rights Act: Religious Discrimination.
Count IX: New Mexico Human Rights Act: Retaliation.
Count X: New Mexico Human Rights Act: Hostile Work Environment.
Count XI: Breach of an Implied Contract of Employment.
Count XII: Breach of the Implied Covenant of Good Faith and Fair dealing.
Count XIII: Violation of New Mexico Whistleblower Protection Act.

For the reasons stated below, the Court agrees and dismisses all remaining claims brought by Plaintiff Pat Flores.

## I.    Plaintiff does not assert any Title VII claims.

Defendants sought dismissal of the Title VII claims (Counts V-VII).  However, Defendants represented in the summary judgment briefing that Plaintiff's counsel clarified that Plaintiff Pat Flores does not assert any such claims.  After the Court ordered supplementation, Plaintiff stated that he does not assert any Title VII claims**.  *See* Doc. 132**.

## II.    Plaintiff does not oppose summary judgment on the New Mexico Human Rights Act claims.

Defendant moved or summary judgment on the New Mexico Human Rights Act claims (Counts XIII-X).  Plaintiff did not address these claims, and expressly stated that he only opposed summary judgment on the claims he addressed in his response.  *See* **Doc. 119 at 1** ("the claims of Pat addressed through this response are not amenable to any grant of summary judgment…"), **at 18** ("Pat respectfully requests this Court deny Defendants' motion for summary judgment on those claims addressed herein").  Moreover, it appears that Plaintiff Pat Flores did not plead any New Mexico Human Rights Act claims.  *See* **Doc. 35.**  Therefore, it appears that Plaintiff Pat Flores does not oppose summary judgment on the New Mexico Human Rights Act claims (Counts VIII-X) and those claims are therefore dismissed.

### III.   New Mexico Whistleblower Protection Act Claim (Count XIII).

Defendants also move for judgment on the pleadings on the New Mexico Whistleblower Protection Act claims.  Plaintiff Pat Flores affirmed that he does not assert a WPA claim.  **Doc. 90 at 5.**

### IV.   First Amendment Speech Claim (Count I) against the City of Farmington.

Defendant City of Farmington seeks summary judgment on the First Amendment speech claim.  In a previous opinion, Chief Judge Johnson found that the law was not clearly established and dismissed the claims against the individual Defendants.  **Doc. 60 at 11-12.**  The City of Farmington is the last remaining defendant under this claim.

To prevail in a § 1983 action against a municipality, Plaintiff must show that his injuries arose as a result of an official policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability can also attach through the direct action or ratification of a final policymaker.  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

Here, Plaintiff argues that Chief Hebbe made the employment decisions and violated his First Amendment rights. The parties assume that Chief Hebbe was a final policymaker for the City of Farmington. Therefore, to assert municipal liability, Plaintiff must show that Chief Hebbe committed the constitutional violation.

At issue is whether the City of Farmington violated Plaintiff Pat Flores' First Amendment speech rights by (1) failing to promote him and (2) declining to extend his 3-year post at the training academy an extra year. Both parties agree that the *Garcetti/Pickering* test applies for Plaintiff's First Amendment claim. **Doc. 119 at 13.** The Court assumes, without deciding, that *Garcetti/Pickering* applies to Plaintiff's First Amendment claim.

Under this test, the "First Amendment prohibits public employers from taking adverse action against employees because of their protected speech. To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, [the Court] appl[ies] the *Garcetti/Pickering* test." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018), *citing Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). The test consists of five elements:

> (1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern;
> (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4) whether the protected speech was a motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant*, 754 F.3d at 1165 (paragraph breaks added). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Id.*; *See also Cypert v. Indep. Sch. Dist. No. I–050 of Osage Cnty.,* 661 F.3d 477, 483–84 (10th Cir.2011)

(affirming summary judgment for defendants where plaintiff could not meet evidentiary burden at the fourth step).

As explained below, Plaintiff's First Amendment speech claim fails on the Fourth and Fifth elements.

### A.    Material in Reply brief.

In a reply brief, Defendant City of Farmington countered Plaintiff's additional material facts.  In explaining why Plaintiff's additional facts did not create a genuine dispute, they cited and added material to the record.  This is not prohibited under the local rules:

> The reply must contain a concise statement of those facts set forth in the response which the movant disputes or to which the movant asserts an objection. Each fact must be **lettered**, must refer with particularity to those portions of the record upon which the movant relies, and must state the **letter** of the non-movant's fact. All material facts set forth in the response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Generally, Tenth Circuit law does not prohibit a district court from considering new material in a reply brief, but it must not prohibit the other side from responding to it. *Pippin v. Burlington Res. Oil And Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (no reversible error where district court considered new material in reply brief and party did not object or file motion for leave to file surreply);  *Conroy v. Vilsack*, 707 F.3d 1163, 1180 n.6 (10th Cir. 2013) (no abuse of discretion in considering new material in reply brief where opposing party had time to file motion for leave to file surreply brief but did not do so);  *Logan v. Sabre, Inc.*, 314 F. App'x 123, 125 (10th Cir. 2009) (same).

Where a party does not file a motion to strike the reply or file a motion for leave to file surreply, the Court may consider the new material. *Pippin*, 440 F.3d at 1192 ("Pippin reads our precedent too broadly to the extent he asserts "*Beaird* is violated if the trial court considers new matters at all." Here, the district court did not preclude a surreply. Pippin had more than enough

time to request time to file a surreply, but did not. Absent such a motion, the district court did not abuse its discretion when it decided this case approximately a month and a half after receiving Burlington's reply.").  Here, several months have passed since Defendants filed the reply brief and Plaintiff has not indicated that he objects to the new material attached to the reply brief or sought leave to file a surreply to respond to the new material.  Therefore, the Court concludes it may consider the additional material in the reply brief.

### B.        First Element: Official Duty.

Defendants argue that there was no constitutional violation because Plaintiff was speaking pursuant to his official duties.  "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009) (quotations omitted).

Initially, Defendants argue that Plaintiff failed to identify *any* protected speech.  There is some merit to Defendants' argument. Plaintiff appears to argue that Defendants discriminated against him for his religious beliefs.  However, because both parties characterize this as a *speech* claim under *Garcetti/Pickering,* the Court will do the same.[1]

Plaintiff identified several instances of religious conversations with coworkers in the workplace.  **Doc. 119 at 12.**  Plaintiff argues that his private conversations with coworkers were not pursuant to his official duties.  Defendants did not address this argument.  Therefore, the Court will assume, for this motion, that the conversations were not pursuant to Plaintiff's official duties.

---

[1] The Eleventh Circuit has applied the *Garcetti/Pickering* test to a plaintiff's First Amendment free exercise of religion claim.  *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1286 (11th Cir. 2012).

C.      **Fourth Element: Plaintiff's speech was not a substantial motivating factor in the employment decision.**

"Under the fourth-prong of *Garcetti,* [Plaintiff] bear[s] the burden of establishing both a detrimental employment decision (adverse employment action) and causation—that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment." *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty*., 587 F.3d 1223, 1236 (10th Cir. 2009) (internal quotation marks removed).

"An employee must produce evidence linking the employer's action to the employee's speech. Speculation or hunches amidst rumor and innuendo will not suffice. Nor can a plaintiff sustain his burden at step [four] simply by showing that the elimination of the protected activity may have been welcomed by the defendants[.]" *Maestas v. Segura*, 416 F.3d 1182, 1188–89 (10th Cir. 2005) (internal citations and quotation marks omitted).

First, Plaintiff must identify the adverse employment action. *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty*., 587 F.3d at 1236 (10th Cir. 2009)  The Court agrees with Plaintiff that (1) failing to promote Plaintiff to lieutenant in 2017 and (2) declining to extend his tenure an extra year at the training academy could be adverse employment actions.  Plaintiff asserts that the decision not to extend him an extra year at the academy cost him a stipend.  However, the Court does not believe that (1) telling Plaintiff to remain silent during a transgender diversity training or (2) Cpt. Tracy's threat to write him up for insubordination for not scheduling a feedback session were adverse employment actions.  Nothing came of the threat after Plaintiff scheduled the feedback session.

However, Plaintiff has not shown that his protected speech was a substantial motivating factor in Chief Hebbe's employment decisions.  It is undisputed that Chief Hebbe was responsible

for deciding who would be promoted to lieutenant and whether Plaintiff was extended an extra year at the training academy.  As explained above, Plaintiff seeks to hold the City of Farmington liable under *Monell* for a First Amendment violation on the theory that Chief Hebbe, a final policy maker, discriminated or retaliated against him.

Plaintiff attempts to carry his burden under this factor by showing that Chief Hebbe believed his personal beliefs were "too strong."  Plaintiff points to his feedback session with Cpt. Tracy, which occurred after the promotion decision was made.  Plaintiff testified at deposition as follows: "Captain Tracy was his designee, and the way it was relayed to me was that the Captain was telling me what the Chief's Reason was for not choosing me to be promoted."  **Doc. 108-1, Ex. A at 124, at ll. 18-24.**  Plaintiff testified that Cpt. Tracy told him that his personal beliefs are "too strong."  **Doc. 119-1, Ex. A, p. 83** ("Ultimately, it was relayed to me from Captain Tracy that I was not chosen because my personal beliefs were too strong.").  It is unclear from the record what "personal beliefs" means.

Plaintiff also cited to the following deposition testimony of Cpt. Tracy, in which Cpt. Tracy described his feedback session with Plaintiff:

> the conversation…specifically talked about the role of the lieutenant and how as a lieutenant sometimes you have to do things that may be against your personal beliefs. And I knew that he had strong personal beliefs, and one of the conversation pieces that came up was related to the LGBTQ community and they had recently had a parade. I think it was the first Pride Parade that we have had in our community. It had just recently happened, so that was kind of the framework of that. Because I knew his personal beliefs were strong in the family and all that stuff, and so I had said that, you know, there are times when you are a lieutenant that you have to do things that may be against your personal beliefs but you still do  it. And I didn't feel like he, at the time in my conversation, I didn't feel like he had the willingness necessarily to want to do that.

Cpt. Tracy Deposition Testimony, **Doc. 119-1, Ex. 2, page 19 of 39.**

Plaintiff believed that Cpt. Tracy was relaying Chief Hebbe's reason for not selecting him – his strong personal beliefs.  **Doc. 108-1, p. 124.**  There is nothing in the record to justify or

support Plaintiff's belief.  Plaintiff's speculation is not sufficient to oppose summary judgment.  *See Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) ("In opposing a motion for summary judgment, [s]peculation or hunches amidst rumor and innuendo will not suffice. Significantly, there is no evidence in the record of any statements made by the Board to directly suggest [Plaintiff] was terminated because of her speech.")(internal citations omitted).

Plaintiff asserted as a material fact that Cpt. Tracy was acting on Chief Hebbe's behalf.  **Doc. 119 at 5, para. 9.**  Plaintiff believes that as a captain, Tracy was acting on behalf of Chief Hebbe and the City.  *Id.*  However, there is nothing in the record to support or justify Plaintiff's belief that Cpt. Tracy was acting on Chief Hebbe's behalf or expressing Chief Hebbe's views.  There is nothing in the record to suggest that Chief Hebbe communicated to Cpt. Tracy that he thought Plaintiff's religious beliefs were too strong to be promoted.  Moreover, there is nothing in the record to support or justify Plaintiff's belief that Cpt. Tracy was relaying Chief Hebbe's opinion, rather than Cpt. Tracy's own beliefs.  Rather, the record reflects that this was Cpt. Tracy's personal opinion.  **Doc. 108, Ex. C, at 58:14-21.** ("there are times when you are a lieutenant that you have to do things that may be against your personal beliefs but you still do it...I didn't feel like he had the willingness necessarily to want to do that.").

Moreover, there is nothing in the record to suggest that Cpt. Tracy was a final policymaker for the City of Farmington or that Chief Hebbe ratified Cpt. Tracy's actions.

Rather, the unrebutted record reflects that Chief Hebbe testified he never told Cpt. Tracy that Plaintiff's religious beliefs were too strong.  **Doc. 125-1 at 107:6-9.**  As explained in detail under the Fifth Factor, Chief Hebbe did not agree with Plaintiff's prior leadership decisions and did not believe Plaintiff had strong leadership skills.  Chief Hebbe believed that Plaintiff refused

to take responsibility or propose solutions for misconduct or abuses that occurred under his supervision.

Moreover, Plaintiff was ranked sixth out of seven by two panels – one consisting of his peers and the other consisting of community members and department leadership.  Chief Hebbe chose two candidates for promotion who were ranked higher than Plaintiff.  This tends to show that Plaintiff's religious beliefs were not a substantial motivating factor.  *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1244 (10th Cir. 2009) ("The Board's decision was reached after retaining and reviewing the report of an independent panel of reviewers, who heard four days of evidence. This independent, unbiased investigation of Dr. Couch's conduct removes any taint of bias that otherwise could have existed."), *citing E.E.O.C. v. BCI Coca–Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 485 (10th Cir.2006) (decisionmaker's use of an independent investigation can remove taint from subordinate's bias). Although Cpt. Tracy was on one committee, Plaintiff did not believe that Cpt. Tracy retaliated or discriminated against him. **Doc. 108-1, Ex. A, at 147.**  There is nothing in the questionaries, the panels notes, or the scores to indicate that the panelists considered Plaintiff's religion during the promotional process.  **Doc. 126, Ex. A, B, E, F, H.**

In sum, Plaintiff failed to show that his religious speech was a substantial motivating factor in Chief Hebbe's decision not to promote Plaintiff or extend him an extra year at the academy.

**D.     Fifth Element: Same employment decision in the absence of the protected speech.**

Defendants also argue that Chief Hebbe would have made the same employment decision in the absence of the protected speech.  The Court agrees.

"At the fifth step… the burden [] shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity." *Trant v. Oklahoma*, 754 F.3d 1158, 1168 (10th Cir. 2014) (internal quotation marks omitted). Summary judgment is appropriate on the fifth step when "any reasonable jury would [have found] that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish him in retaliation for his allegedly protected speech." *Anemone v. Metro. Transp. Auth.,* 629 F.3d 97, 117 (2d Cir.2011); *see also Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.,* 587 F.3d 1223, 1244–45 (10th Cir.2009) (affirming summary judgment in part because defendants met their burden at the fifth step).

The candidates for promotion were interviewed and evaluated by two separate panels, one consisting of Plaintiff's peers in the department and another consisting of community members and department leadership. The panels asked set questions. The questions and notes on the interviewees' answers are in the record. **Doc. 126.** Panel members evaluated and scored each candidate as to various criteria. ***Id.*** The scores could be modified based on other criteria, such as educational attainment. The candidates were ranked according to their scores, and Plaintiff was ranked sixth out of seven. Chief Hebbe then interviewed the candidates and made the final hiring decision. He picked two higher ranked candidates for promotion. *See* **Doc. 126.** Plaintiff has not shown that the panels were tainted by bias against his protected speech.

Chief Hebbe also articulated the following reasons he did not select Plaintiff:

- Plaintiff's failure to take responsibility for or propose solutions for his subordinates' behavior. **Doc. 125-1 at 110-116.**
- Chief Hebbe changed the lieutenant position to add more responsibilities. Plaintiff previously expressed reluctance in the new duties assigned to the lieutenant position. **Doc. 108-2 at 103.**
- Chief Hebbe disagreed with Plaintiff's comparison of his position as director of the training authority to that of the Chief of Police. Chief Hebbe believed that Plaintiff failed to explain how the two positions were similar.

15

- Plaintiff's failure to respond to and propose policies to address instructor and trainee interaction, and address misconduct or abuse.  **Doc. 125-1 at 110-116.**
- Plaintiff's lack of belief in diversity programs on Native American, undocumented immigrant, and transgender issues.  **Doc. 108-2 at 105.**  Chief Hebbe viewed diversity training as "bringing in people of a certain position and they are explaining to us their experience with the police."  **Doc. 108-2 at 106.**

Plaintiff generally argues that these reasons are fictious and invented by Defendants but does not specifically refute them.  **Doc. 119 at 16.**

Moreover, Chief Hebbe did not believe Plaintiff had strong leadership skills, or alternatively disagreed with his prior leadership decisions.  Chief Hebbe viewed leadership skills as an essential part of the lieutenant position.  Chief Hebbe gave several specific examples in which he believed Plaintiff failed to address misconduct or abuses by subordinates.  *See* **Doc. 125-1, at p. 110-116.**  He gave the following examples:

- A school resource officer under Plaintiff Pat Flores' supervision had a sexual relationship with a seventeen-year-old student.  Chief Hebbe believed this was a significant liability. **Doc. 125-1 at p. 114.**
- When Plaintiff was director of the training academy, a trainee believed she was being targeted by one of her instructors, Plaintiff's brother Reyes Flores, who she alleged had a bias against women.  Plaintiff took a hands-off approach, and the investigation by a sheriff's office was ultimately halted because they didn't believe Plaintiff, as director of the training academy, would do anything to resolve the issue.  Chief Hebbe was not happy with how Plaintiff Pat Flores handled the situation.  **Doc. 125-1 at 110-112.**
- An employee took a family out to a shooting range.  One of the family members found and took home a tear gas grenade.  The tear gas grenade went off inside the family's home, and Farmington faced potential liability.  Plaintiff Pat Flores did not take responsibility or propose policies and procedures to prevent it from happening again.  **Doc. 125-1 at 113.**
- When Plaintiff was the director of the training academy, an instructor began a sexual relationship with a female cadet.  Chief Hebbe stated he asked Plaintiff as the director of the training academy "what we should do for discipline and what policies we need to change to stop these things and I essentially got no feedback back."  **Doc. 125-1 at 115-116.**  Plaintiff did not recommend anything for the instructor but recommended that the female cadet should also be disciplined "or it will look like we're biased towards women." Chief Hebbe did not believe that Plaintiff responded to the situation or proposed policies to prevent it from happening again.

In sum, Chief Hebbe believed that Pat Flores failed to address misconduct and abuses, and failed to implement policies to address misconduct.  At best, there was a disagreement about

16

management style.  Chief Hebbe stated that for the lieutenant position he looks for employees who can identify weaknesses in the department and propose solutions. These incidents from the training academy show that Chief Hebbe likely would not have extended Plaintiff an extra year at the academy or promoted him in the absence of his protected speech.

Defendant City of Farmington carried its evidentiary burden and showed that regardless of Plaintiff's protected speech it would have taken the same employment actions.  *Trant v. Oklahoma*, 754 F.3d 1158, 1168-69 (10th Cir. 2014).  The facts above were generally undisputed and any alleged disputes did not create a genuine dispute of material fact precluding summary judgment.

## V.    Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Counts XI and XII)

Plaintiff alleged that Defendant City of Farmington breached an implied employment contract and the implied covenant of good faith and fair dealing.  He did not allege the breach of any express contractual provision. **Doc. 35 at 28.**  In his response, he argues he was "deprived of the benefits of the implied contract when he was not promoted and his constitutional rights were violated." **Doc. 119 at 17.**

Defendant City of Farmington argues it has immunity as to any implied contract claim pursuant to NMSA § 37-1-23(A).  The Court disagrees.  New Mexico has granted governmental entities immunity as follows:

> A. Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract.

N.M. Stat. Ann. § 37-1-23(A).  An implied employment contract based on a written personnel manual may be a "valid written contract" for which immunity is waived.  *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 20, 121 N.M. 728, 734, 918 P.2d 7, 13. Moreover, NMSA § 37-1-23(A) does not apply to cities. *Garcia v. Middle Rio Grande Conservancy Dist.*,

918 P.2d at 12 n.2.  Therefore, Plaintiff's implied contract claim does not appear to be barred by NMSA § 37-1-23.

Plaintiff points to the personnel manual as creating an implied contract.  In New Mexico, "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (internal citation omitted). "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4, 115 N.M. 665, 857 P.2d at 783. If the alleged employer's promise is not sufficiently explicit, courts will not find an implied contract. *See Hartbarger v. Frank Paxton Co*., 857 P.2d at 780.

Plaintiff failed to show how Defendant City of Farmington breached a term of the implied contract.  *See* **Doc. 119 at 16-18.**  Plaintiff cites to the following provision in the City of Farmington personnel rules:

> When a job vacancy is announced, any employee may apply for transfer or promotion to the position, provided the employee is not suspended from employment or otherwise under an ongoing disciplinary sanction at the time of the application.   All such qualified applicants will be considered, although no employee is assured of selection.  Employees will be promoted or transferred when all other qualification and selection results are equal.

**Sec. 21-6-1, Doc. 119-1, Ex. 8 at 37 of 39.**  Plaintiff argues that based on this language he is entitled to a promotion. **Doc. 119 at 17.**  The Court disagrees, as this language is not specific or definite enough to create a contract right to a promotion.  Alternatively, the employment rules create no expectation that all applicants would be promoted to lieutenant if they were qualified. This provision expressly states that it does not guarantee promotions.  Moreover, Plaintiff has not shown that he was the most qualified for the position or equal to the two candidates selected for

promotion.  Two interview panels along with Chief Hebbe did not find "all other qualification and selections results …equal."  **Doc. 119-1, Ex. 8 at 37 of 39.**  Plaintiff was ranked sixth out of seven, and the two selected for promotion were ranked higher than Plaintiff.  Plaintiff has not disputed Chief Hebbe's concerns about his leadership.

Plaintiff also cites to Sec 21-1-7 of the personnel rules, which states that it is the policy of the city not to discriminate on the basis of religion with respect to promotions. **Doc. 119-1, Ex. 8, at 36 of 39.**  The Court found above that there was no First Amendment speech violation.  Plaintiff has not connected Chief Hebbe to any bias against his religious beliefs, nor shown that the panels were tainted by any religious bias.  Although Cpt. Tracy made certain comments about his personal beliefs, Plaintiff did not believe that Cpt. Tracy discriminated against him.

Defendant City of Farmington also seeks summary judgment on the claim for violation of the implied covenant of good faith and fair dealing.  For the same reasons as above, the Court agrees.  "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co., Inc. v. Males*, 1990-NMSC-105, ¶12, 111 N.M. 57, 801 P.2d 639, 642 (1990)(citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, ¶12, 111 N.M. 57, 801 P.2d at 642 (internal quotation marks omitted). An implied covenant of good faith and fair dealing breach arises when "one party wrongfully and intentionally use[s] the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 144 N.M. 449, 188 P.3d 1200. Plaintiff has not shown how Defendants acted in bad faith or willfully deprived Plaintiff of a contractual benefit. *See* **Doc. 119 at 17-19.**

## CONCLUSION

For the reasons stated above, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law as to Plaintiff Pat Flores' claims. Therefore, Plaintiff Pat Flores' remaining claims are dismissed.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Judgment on the Pleadings **(Doc. 88)** is hereby **GRANTED IN PART** and **DENIED IN PART** for reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment **(Doc. 108)** is hereby **GRANTED**.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**