IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————————

REYES FLORES, and
PAT FLORES,

        Plaintiffs,

     vs.                                1:18-cv-00402 KWR/KBM

CITY OF FARMINGTON,
STEVEN HEBBE, NICK BLOOMFIELD,
MATTHEW VEITH, TOM SWENK, and
TAFT TRACY, *all in their individual capacities*,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon the Defendants' Motion for Summary Judgment against Plaintiff Reyes Flores (**Doc. 107**). Having reviewed the parties' pleadings and the relevant law, the Court finds that the Defendants' motion is well-taken and, therefore, is **GRANTED.** Plaintiff Reyes Flores' remaining claims are dismissed.

## BACKGROUND

This is a free speech and religious discrimination case. Plaintiff Reyes Flores is an officer with the Farmington Police Department. At the time of the alleged incidents, he was a field training officer responsible for training officers who arrived from the academy. Defendants investigated Plaintiff Reyes Flores for alleged bias or discrimination against his female trainees. During this investigation, they also heard evidence that as a field training officer and training academy instructor he was instructing his trainees based on his "personal beliefs", which some trainees found offensive. At the conclusion of the investigation, Chief Hebbe disciplined him by

giving him a "counseling" and removing him from his specialty positions, including field training

officer position.  Plaintiff lost the stipend that went with the specialty positions, but remained a

patrol officer.  He was allowed to reapply for specialty positions after a year.  Plaintiff asserts that

this investigation was in fact aimed at punishing his religious speech.

In amended complaint filed March 4, 2019 Plaintiffs assert the following fourteen claims:

Count I: 42 U.S.C. § 1983: First Amendment Retaliation.
Count II: 42 U.S.C. § 1983: Fourteen Amendment Equal Protection / Hostile Work
    Environment.
Count III: 42 U.S.C. § 1983: Fourteen Amendment  / Procedural Due process.
Count IV: 42 U.S.C. § 1983: Fourteenth Amendment Equal Protection / Religious
    Discrimination.
Count V: Title VII: Religious Discrimination.
Count VI: Title VII: Retaliation.
Count VII: Title VII: Hostile Work Environment.
Count VIII: New Mexico Human Rights Act: Religious Discrimination.
Count IX: New Mexico Human Rights Act: Retaliation.
Count X: New Mexico Human Rights Act: Hostile Work Environment.
Count XI: Breach of an Implied Contract of Employment.
Count XII: Breach of the Implied Covenant of Good Faith and Fair dealing.
Count XIII: Violation of New Mexico Whistleblower Protection Act.

**Doc. 35.**  Some of these claims were resolved in other dispositive motions.  Chief Judge Johnson

dismissed the § 1983 claims on qualified immunity grounds against the individual Defendants.

**Doc. 60.**  This case was transferred to the undersigned in early 2020.  It appears that the following

claims remain and are the subject of this motion for summary judgment:

- Count I (First Amendment Retaliation) against Defendant City of Farmington
- Counts V-VII (Title VII claims) against Defendant City of Farmington
- Counts VIII-X  (New Mexico Human Rights Act Claims) against Defendants Farmington, Veith, Hebbe, and Swenk.
- Counts XI and XII (Breach of contract or breach of implied covenant of good faith and fair dealing)
- Counts XIII (New Mexico Whistleblower Protection Act).

## FACTS[1]

Plaintiff Reyes Flores is a current Farmington Police Department officer.  At the time of the incidents in this case, he was a field training officer and instructor at the academy.  He was a member of the SWAT team, a master firearms and ethics instructor at the academy.  **UMF 12.**  He taught cadets and also trained some probationary trainees.

### I.      Allegations and Internal Affairs Investigation.

Chief Hebbe authorized an internal affairs investigation into Plaintiff Reyes Flores when he received a report from Corporal Nick Bloomfield that one female employee was concerned she "was working in an environment where the lead instructor that was evaluating her performance was hostile to women."  **Doc. 107 at 2 UMF 1.**

Lt. Veith conducted the internal affairs investigation and began interviewing officers who were trained by Plaintiff Reyes Flores.  **UMF 2.**  Lt. Veith learned of potential allegations from Officers Sierra Manes, Angela Price, and Rachel Off.  **UMF 3.**  During his investigation, Lt. Veith learned that Officer Off complained that Plaintiff refused to allow her to qualify with a gun that was more suited to her than the regulation gun, resulting in her complaint that "Reyes hates women."  Corporal Bloomfield later worked with her to qualify with a gun more suited to her. **Doc. 117-1 at 17-18.**

Officer Prince alleged that Plaintiff instructed her on religion during her field training with Plaintiff.  **UMF 4.**  She told Lt. Veith that Plaintiff would have her pull the car over to the side of the road so he could ask her religious based questions, such as "how do I feel God views me, myself and my ex, Brian, living in a home not being married?"  **UMF 5.**  Because Officer Prince

---

[1] The following material facts herein and in the discussion section are not subject to genuine dispute unless noted otherwise.  For brevity, not all facts discussed in detail in the Discussion section will be repeated in the Facts section.

was Plaintiff's trainee, she felt she needed to answer question in a way to allow Plaintiff to feel as if she was on the same page with him in terms of morals, ethics, and religion. **UMF 6.**

As her supervisor and field training officer, Plaintiff was responsible for evaluating her. She had to pass field training before she could become a police officer. Plaintiff ordered Officer Prince to write an evaluation of him as a field training officer for his records. Plaintiff told her that before he would write her final evaluation, she had to give Reyes this written evaluation. If she failed her field training, Officer Prince knew she would lose her job and felt that Plaintiff was threatening her job and bullying her. **UMF 7.**

Officer Prince testified that Plaintiff told her that his daughters would not be going to college, although his son could, and that he was raising his daughters to be good wives and mothers instead. **UMF 9.** Officer Prince testified that he told what she believed to be a sexist joke. In her opinion Plaintiff believed that women were beneath men. ***Id.*** Officer Off told Lt. Veith that Plaintiff believed that "women should not work" and Plaintiff prohibited his wife from working when they had children. **Doc. 107-4 at 1.** Officer Off also told Lt. Veith that Plaintiff looked down on her because she was a woman. **UMF 11, Doc. 107-4 at 1.** [2]

Lt. Veith also interviewed Officer Off and three other new officers assigned to field training with Plaintiff. When Plaintiff was training Officer Off, he would turn on the radio to a Christian

---

[2] Plaintiff asserts that the Court cannot consider what Officer Off told Lt. Veith because it is hearsay. The Court concludes it is not hearsay because it is not offered for the truth of the matter asserted, i.e., to show that Plaintiff in fact has a bias against women. Instead, the statements are offered to show Defendants state of mind when making an employment decision and that Defendants believed there were legitimate reasons for its decision to investigate and discipline Plaintiff. *See Zamora v. Bd. of Educ. for Las Cruces Pub. Sch.*, 553 F. App'x 786, 790 (10th Cir. 2014) (report not hearsay because defendant offered it to establish effect it had on state of mind when decision was made to terminate plaintiff), *quoting Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir.1993) (holding that statements "offered to establish [defendant's] state of mind in making [an employment] decision[ ] and ... not offered for the truth of the matter asserted" are not hearsay); *see also Adkins v. Tower Corp.*, 141 F.3d 1184 (10th Cir. 1998) (testimony as to what third party said about plaintiff's job performance was not offered to show that performance as lacking, but to demonstrate that employer thought there were legitimate reasons to fire plaintiff); *Payan v. Vill. of Ruidoso*, 2014 WL 12797213, at *6 (D.N.M. 2014) (Johnson, J.).

station, asked whether the car's occupants liked the station and said "If you didn't too bad" and had them listen to the Christian radio station. **UMF 10.**

Lt. Veith also interviewed Officer Keeling. Officer Keeling heard and did not agree with Plaintiff's belief that women should stay home. She stated during an interview that he seemed like he was putting women down and implying that women who did not stay home were not being good wives. **Doc. 117-2 at 27-28.**

Lt. Veith had several meetings with Plaintiff. Lt. Veith wrote in his report that he brought up the alleged conversations concerning the Bible and personal religious beliefs raised by Officer Prince. Lt. Veith expressed concern that Plaintiff did not recall any specific information during that time. Plaintiff did not specifically refute the allegation but said: "I wish I had the mind I used to have." **Doc. 122-2 at 2.** Plaintiff then explained that he had memory issues caused by a motorcycle crash.

Plaintiff admitted to Lt. Veith he said that homosexuality was wrong. **Doc. 107-4 at 2.** He did not recall whether he told Officers Prince or Johnston that their relationship would be questioned by God. *Id.* He also did not recall whether he discussed that his daughters should not go to college because women should stay in the home. *Id.*

During his internal affairs interviews with Lt. Veith, Plaintiff denied that he taught that premarital sex was wrong during his training of recruits. Plaintiff stated he would respond if asked about his beliefs and he used his life as an example of how to act. When Lt. Veith asked Plaintiff whether he made Officer Prince stop the car to talk about the Bible, Plaintiff evaded answering the question. **UMF 13.** Plaintiff asserts he could not remember whether this occurred.

Plaintiff explained to Lt. Veith that he could instruct trainees based on his personal life as an example of ethical behavior. **Doc. 122-2 at 2.** Plaintiff was advised on his behavior to avoid further complaints of a hostile work environment. **Doc. 122-2 at 3.**

## II.    Internal Affairs Report.

Lt. Veith produced a twenty-seven page internal affairs report. In the report, Lt. Veith found that while Plaintiff was in a position of authority, he used his personal religious views and lifestyle as an example of ethical behavior caused offense and a hostile work environment. **UMF 14.** Lt. Veith found that Officer Prince was subject to questioning concerning her morals and behavior while Plaintiff invoked the Bible. **UMF 14.** Officer Prince was afraid to speak against Plaintiff. Lt. Veith recommended in the report the Department find that Plaintiff violated the code of conduct and violated City and FPD rules regarding equal opportunity and affirmative action. **UMF 14.** The internal affairs report also found that Plaintiff expressed to female trainees or cadets discriminatory beliefs against women.

In the report Lt. Veith determined or recommended that (1) Plaintiff engaged in discriminatory conversations with trainees and subordinates; (2) Plaintiff would be removed from any training position; (3) Plaintiff would not be eligible to assess for a specialty position for one year; (4) Plaintiff would have his field training officer status removed; (5) Plaintiff would be removed from the SWAT team; (6) Plaintiff would be excluded from conducting law enforcement trainings; and (7) Plaintiff would be given a written reprimand. **Doc. 107 at 5, UMF 15;** *See also* **Doc. 117-1 at 50 (notice of corrective action).**

## III.   Plaintiff's grievance and Chief Hebbe's response.

Reyes submitted a grievance objecting to the internal affairs report. **Doc. 117, Ex. 13.** He argued that FPD violated policy (1) by not providing Plaintiff a list of charges made against him;

(2) by not providing documentation related toe ach allegation; and (3) FPD  by not providing him due process, and had violated its own code of conduct and code of ethics.  *Id.*

Chief Hebbe denied the grievance, reasoning in part as follows.  Chief Hebbe noted that as an ethics instructor "you are not free to engage in conversations of a personal nature regarding your opinions with trainees under your supervision. Additionally, some of these trainees were on probation, meaning they were fully aware of the tenuous hold they had on their job and the impact you, as their supervisor, could have upon that job." **Doc. 107-2 at 8.**  Chief Hebbe further wrote that "this is about what our professional expectations of all of our employees are, and about what every instructor or FTO in the agency is able to do.  It is not acceptable for any FTO, in an official capacity, to share their personal feelings about race, religion, sexual orientation, marital status, gender or other topics such as abortion, premarital sex or transgender issues while conducting formal training sanctioned by this agency.  If every instructor did this, imagine the wide variety of opinions that would be stated in the name of the Farmington Police Department to our employees. The result would violate numerous laws, promote a workplace of division and intolerance, and could give rise to lawsuits." **Doc. 117-2 at 8, Ex. 7.**

Chief Hebbe also concluded that "I find that the investigation showed that inappropriate conversations and comments did take place.  The change in assignment is in the best interest of the Department and does not affect your rate of pay.  There has been no adverse employment action and you are still a non-probationary patrol officer.  Further, you are eligible to sign up for overtime just as every other patrol officer of the Department is able to do." *Id.*

In other words, Chief Hebbe believed that Plaintiff shared his discriminatory about women to subordinate employees.  Many of people who raised concerns about Plaintiff's statements were

probationary employees.  **UMF 17.**  Moreover, employees from the San Juan County Sheriff's office shared concerns that Plaintiff was preaching during his lectures. **UMF 17.**

Plaintiff then filed a further grievance and sought a determination that his discipline could be reviewed by a grievance committee.  The grievance committee determined that the written reprimand was "grievable."  According to grievance procedure, Chief Hebbe was then required to respond to the grievance.  On December 22, 2016, Chief Hebbe responded by reducing the discipline to a counseling.  Chief Hebbe also noted that Plaintiff could apply to a specialty position after one year.  Plaintiff lost stipends related to this specialty positions.  **UMF 26**

Chief Hebbe thought that since Plaintiff did not outright deny his actions and did not "own" those actions, this was an aggravating factor in his removal from specialty positions.  Plaintiff did not recognize that he did or said anything that offended anybody.  **UMF 18.**  Plaintiff did not deny that he made certain comments or state that he would refrain from those statements in the future if returned to a teaching position.

Plaintiff has been assigned to the patrol division since the end of 2016 and is currently assigned there.  **UMF 20.** Since returning to patrol, Plaintiff has not applied for any specialty position, such as SWAT or training.  **UMF 22.**   Plaintiff filed a charge with the New Mexico Human Rights Bureau and the EEOC on May 26, 2017.

Plaintiff was not permitted to review the entirety of the internal affairs investigation because that was not standard practice.  This policy applies to all officers.  **UMF 21.**

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996).  To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed."  *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

## DISCUSSION

Defendants seek summary judgment on all remaining claims brought by Plaintiff Reyes Flores.

## I.      Hostile Work Environment and Whistleblower claims are conceded.

Plaintiff Reyes Flores conceded the hostile work environment claims (Counts VI, X) and the Whistleblower Protection act claims (Count XIII) should not proceed to trial.  Those claims are therefore dismissed.

## II.     First Amendment Speech Claim (Count I).

Plaintiff alleges that the City of Farmington and Chief Hebbe violated his First Amendment rights by disciplining him for his protected speech.  In a previous opinion, Chief Judge Johnson found that the law was not clearly established and dismissed the claims against the individual

Defendants.  **Doc. 60 at 11-12.**  The City of Farmington is the last remaining defendant under this claim.

To prevail in a § 1983 action against a municipality, Plaintiff must show that his injuries arose as a result of an official policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability can also attach through the direct action or ratification of a final policymaker.  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

Both parties agree that the *Garcetti/Pickering* test applies for Plaintiff's First Amendment claim.  The Court assumes, without deciding, that *Garcetti/Pickering* applies to Plaintiff's First Amendment claim.  Plaintiff has not expressly asserted a free exercise claim.

Under this test, the "First Amendment prohibits public employers from taking adverse action against employees because of their protected speech. To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, [the Court] appl[ies] the *Garcetti/Pickering* test."  *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018), *citing Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014).  The test consists of five elements:

> (1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern;
> (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4) whether the protected speech was a motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant*, 754 F.3d at 1165 (paragraph breaks added). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Id.*  As explained below, Plaintiff's First Amendment speech claim fails on the First and Third elements.

A.      **First Element: Speech was made pursuant to Plaintiff's official duties.**

Defendants argue that there was no constitutional violation because Plaintiff was speaking pursuant to his official duties.  The Court agrees.  "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009) (quotations omitted).

"[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.  At the same time, not all speech that occurs at work is made pursuant to an employee's official duties. Nor is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties. Instead, we must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203–04 (10th Cir. 2007) (internal citations and quotation marks omitted).

However, speech "not explicitly required as part of [an employee's] day-to-day job" may fall within the scope of that employee's official duties.  *Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010).  "Speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties…" *Id.* The focus is ultimately whether the speech "stemmed from and [was of] the type ... that [the employee] was paid to do… regardless of the exact role of the individual or entity to which the employee has chosen to speak."  *Id.*

Plaintiff was a field training officer, firearms instructor and ethics instructor.  He was also an instructor at the academy. **UMF 12.**  The undisputed evidence reflects that the speech identified

in the internal affairs report occurred in the course of Plaintiff's official duties as an instructor or

field training officer. The officers who reported or told Lt. Veith about this speech were generally

his trainees or subordinates. The internal affairs report identified the following speech:

- Plaintiff asked Officer Prince, a subordinate or trainee, religious based questions while on patrol, such as "How do I feel God views me, myself and my ex, Brian living in a home and not being married?" **Doc. 107, UMF 5.** Officer Prince believed that Plaintiff was imposing his religion on her. He commented about his family, beliefs, and women. He made comments about women "being in their place." **Doc. 117-1 at 2.**
- Officer Off, his trainee, believed that "Reyes hates women." **Doc. 107, UMF 4.**
- Officer Prince believed she was forced to write a favorable evaluation for Plaintiff as her FTO. **UMF 7.**
- Plaintiff told Officer Prince that his daughters would not be going to college, although his son could, and that he was raising his daughters to be good wives and mothers. Officer Prince believed he told sexist jokes and believed women were beneath him. **UMF 9.**
- During field training, Plaintiff would turn the radio to Christian stations.
- Cadet Manus stated that when he was instructing her at the academy he would push his own beliefs and told trainees they needed "to be married before sex" and not to drink or it will ruin their career. **Doc. 107-2 at 4.** Multiple cadets testified that Plaintiff spoke about his religion at the academy and told them not to have sex before marriage or drink alcohol. **Doc. 107-2 at 4-5.** Plaintiff debated the meaning of bible verses while he was transporting cadets.
- Community Service Officer Keeling was taught at the academy by Plaintiff. Plaintiff said in front of her "all of his trainees were female and he did not know how he got that lucky…" CSO Keeling believed that Plaintiff expressed that it was better for women to stay home and not work. **Doc. 107-1 at 6.**
- Officer Discenza-Smith was instructed by Plaintiff at the academy. She described some of his commentary as "off color", and believed Plaintiff was "misogynistic" and his wife a "subservient mistress." **Doc. 107-1 at 6.**
- Officer Donaghe was trained by Plaintiff at the academy. Plaintiff would tell cadets that he had sex with his wife the night before. Officer Donaghe stated that Plaintiff believed women should not work and should stay at home. Officer Donaghe stated that Plaintiff would not help women in the academy unless he was directed to, which Officer Donaghe stated was odd because he would help men. **Doc. 107-1 at 7.**

Here, the above speech identified in the internal affairs report clearly was directed at or

made in the presence subordinates, including Plaintiff's trainees or cadets. Moreover, it was made

in the course of instructing or training cadets or officers. It is undisputed that Plaintiff believed he

was teaching ethics by referencing his personal life.  Therefore, the Court concludes the speech is not protected because it was pursuant to his official duties.

Plaintiff generally argues that his speech occurred in informal conversations with co-workers and were not pursuant to his official duties.  It is unclear what speech Plaintiff is referencing.  He does not cite the speech in the record or cite to the record which shows the speech occurred in informal conversations with co-worker.  *See* **Doc. 117 at 15-18.**  In determining whether an employee engages in speech during the course of performing an official duty, the Court views the record in the light most favorable to the Plaintiff. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1204 (10th Cir. 2007).  However, Plaintiff is required to identify such speech in the record or cite to the record to create a genuine dispute of material fact. Fed. R. Civ. P. 56(c), (e).

 To the extent Plaintiff refers to the above speech cited by the Court, it is clear that this speech occurred pursuant to his official duties.  To the extent Plaintiff refers to *other* protected speech he has not identified that speech in his argument.  *See* **Doc. 117 at 15-18.**

B.      **Third Element: Balancing test.**

Alternatively, Plaintiff's First Amendment claim fails because Defendants' interest as an employer is sufficient to outweigh Plaintiff's free speech interests.  The Tenth Circuit summarized this balancing test under the third element of *Garcetti/Pickering* as follows:

> "[T]here is no easy formula for 'weighing' an employee's First Amendment speech against an employer's interest in an efficient and disciplined work environment." *Casey,* 473 F.3d at 1333. Nevertheless, the question is whether the employer "has an efficiency interest which would justify it in restricting the particular speech at issue." *Cragg,* 143 F.3d at 1346. "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Pertinent considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working

> relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* Arguably, "the only public employer interest that can outweigh a public employee's recognized speech rights is the interest in avoiding direct disruption, *by the speech itself,* of the public employer's *internal* operations and employment relationships." *Flanagan v. Munger,* 890 F.2d 1557, 1566 (10th Cir.1989).

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007). "These considerations ... make apparent that the state interest element of the test focuses on the effective functioning of the public employer's enterprise. Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Fields v. City of Tulsa*, 753 F.3d 1000, 1014 (10th Cir. 2014), *quoting Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). This is a legal determination for the Court, and the Defendants bear "the burden of proof to justify its regulation of speech" under this prong. *Knopf v. Williams*, 884 F.3d 939, 955 (10th Cir. 2018).

In conducting this balancing test, the Court views the facts as the defendant-employer reasonably believed them to be at the time it made its employment decision. *Rupp v. Phillips*, 15 F. App'x 694, 702 (10th Cir. 2001) ("This is consistent with the Supreme Court's rule that an employer's decision should be based on a reasonable interpretation of the evidence available to it."); *see also Deutsch v. Jordan*, 618 F.3d 1093, 1102 (10th Cir. 2010) (It "appears that there may not even be a constitutional violation if the government official reasonably (although incorrectly) believes facts about the employee's statement that would justify the action taken against the employee) *citing Waters v. Churchill,* 511 U.S. 661, 675–78, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) ("…when there are conflicting accounts of the employee's speech or conduct, the court should consider the employee's behavior as the government believed it to be, so long as that belief was reasonable.") *and id.* at 685–86, 114 S.Ct. 1878 (Souter, J., concurring) (explaining that plurality opinion expresses views of majority of Court)); *Walden v. Centers for*

*Disease Control & Prevention,* 669 F.3d 1277, 1288 (11th Cir. 2012) (noting that the United States Supreme Court held in "*Waters* that when a court must engage in *Pickering*'s balancing test and weigh the government's interests against the First Amendment interests of the employee, it should look to the facts as the employer *reasonably* found them to be.").

Here, Defendants reasonably believed that Plaintiff's speech created a work environment hostile or discriminatory to women.  They also reasonably believed his speech significantly disrupted the internal operations of FPD and personnel relationships.  The Court explains as follows.

The internal affairs investigation began following allegations that Plaintiff, a field training officer and instructor discriminated against women or created a hostile work environment.  **Doc. 107, UMF 1.** Lt. Veith conducted a thorough internal affairs investigation and started interviewing officers and cadets trained by Plaintiff.  The transcripts of some of these interviews are in the record.  He ultimately produced a 27-page internal affairs report.

Lt. Veith did not only include facts that were to the detriment of Plaintiff, but he noted when officers or cadets did not find his comments offensive.  *See, e.g.* **Doc.  117-1 at 6** (Officer Mason "did not have any negative comments concerning Officer Flores.").

The internal affairs report found that Plaintiff violated the FPD code of conduct and the City of Farmington Personnel Rules Section 21-1-7.  It noted that "while in a position of authority over numerous recruits as a Training Officer teaching Ethics, a firearm instructor, and an FTO, Plaintiff used his personal religious views and lifestyle as an example of ethical behavior which caused offense to subordinates causing a hostile work environment."  **Doc. 117-1 at 8.**

In reviewing the substance of the allegations in the report, many of Plaintiff's alleged statements were perceived by the cadets or trainees as hostile to or discriminatory against women.

These are discussed extensively above and documented in the internal affairs report.  *See* **Doc. 117-1 at 1-8.**

Plaintiff filed a grievance objecting to the internal affairs report.  Chief Hebbe responded to Plaintiff's grievance in a letter.  He wrote that as an ethics instructor "you are not free to engage in conversations of a personal nature regarding your opinions with trainees under your supervision. Additionally, some of these trainees were on probation, meaning they were fully aware of the tenuous hold they had on their job and the impact you, as their supervisor, could have upon that job." **Doc. 107-2 at 8.**  Chief Hebbe further wrote that "this is about what our professional expectations of all of our employees are, and about what every instructor or FTO in the agency is able to do.  It is not acceptable for any FTO, in an official capacity, to share their personal feelings about race, religion, sexual orientation, marital status, gender or other topics such as abortion, premarital sex or transgender issues while conducting formal training sanctioned by this agency. If every instructor did this, imagine the wide variety of opinions that would be stated in the name of the Farmington Police Department to our employees.  The result would violate numerous laws, promote a workplace of division and intolerance, and could give rise to lawsuits." **Doc. 117-2 at 8, Ex. 7.**

Chief Hebbe also concluded that "I find that the investigation showed that inappropriate conversations and comments did take place.  The change in assignment is in the best interest of the Department and does not affect your rate of pay.  There has been no adverse employment action and you are still a non-probationary patrol officer.  Further, you are eligible to sign up for overtime just as every other patrol officer of the Department is able to do." *Id.*

Ultimately, Defendants removed Plaintiff from his field training officer and instructor positions but allowed him to reapply for specialty positions after a year.

In applying this *Brammer-Hoelter* considerations above, the Court finds as follows. Defendants reasonably believed that Plaintiff's speech was aimed at or in the presence of his trainees, cadets, or subordinates.  They also reasonably believed that the offending speech generally occurred during the course of training or instruction.  The substance of the speech clearly disrupted harmony among co-workers, had a detrimental impact on close working relationships for which loyalty and confidence are necessary, impeded Plaintiff's teaching duties, and significantly interfered with the regular operation of the department.  Defendants have a strong interest in preventing a hostile work environment and limiting reasonably perceived gender discrimination and associated liability.

Defendants also have a strong interest in controlling what a field training officer or instructor teaches their trainees and cadets.  Even if Defendants were wrong and the speech did not occur while Plaintiff was actively training or instructing cadets and trainees, the speech still would have been highly disruptive to the efficient operations of the department because Plaintiff was a teacher or trainer.  *Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 671 (7th Cir. 2006) (as to cosmetology school, "the instructor/student relationship does not end the moment the instructional period is over").

Plaintiff extensively disputes Lt. Veith's facts and findings in the internal affairs report. *See* **Doc. 117 at 6-9.**  Plaintiff disputed the findings and conclusions of the internal affairs investigation because the investigation was "biased, unfair, dishonest, and conducted in violation of the COF/FPD rules and procedures."  **Doc. 117 at 6-8.**  For the reasons stated by Defendants, none of these disputes ultimately render it unreasonable for Lt. Veith to believe the facts therein. **Doc. 122 at 5-8.**

The Court also finds that internal affairs report was thorough and did not mischaracterize the record.  **Doc. 122 at 5-7.**  The internal affairs report summarized Lt. Veith's interviews with many cadets and officers.  The transcripts of some of these interviews are in the record.  Lt. Veith noted multiple times that some interviewees did not find Plaintiff's comments offensive.  *See* **Doc. 107-1 at 1-9**.  The testimony between various cadets and trainees did not conflict.  Even if it did, in reviewing this testimony, Lt. Veith could reasonably weigh it and decide which carries more weight.

Most importantly, Plaintiff points to nothing that would render it unreasonable for Chief Hebbe to rely on the internal affairs report, which was extensive and well-documented.  Based on the internal affairs report provided by Lt. Veith, Chief Hebbe believed that Plaintiff, in his capacity as a field training officer, was inappropriately teaching and lecturing trainees on his personal views, which included discriminatory views toward women.

Moreover, Defendants reasonably believed that Plaintiff's views about women and his instruction of his trainees based on his personal views could *potentially* become so disruptive to warrant removing him from his training position and outweigh Plaintiff's interest in the speech.  *Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014) ("defendants need only establish that speech was *potentially* disruptive to operations").  The fact that *some* people did not find his speech or views offensive or some people did not formally report Plaintiff is not determinative.

Therefore, the Court concludes that Defendants' interest in prohibiting the speech outweighed Plaintiff's interest.

## III.　　Discrimination and retaliation claims under Title VII and New Mexico Human Rights Act (Counts V, VI, VIII, IX).

Plaintiff alleged religious discrimination claims under Title VII and the New Mexico Human Rights Act.  Plaintiff also asserts that he was retaliated against for speaking in opposition to Chief Hebbe's participation in Farmington's gay pride parade.  The parties agree that the familiar *McDonnell-Douglas* burden-shifting framework applies.  The relevant Tile VII law is below:

> Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Crowe v. ADT Sec. Servs. Inc.,* 649 F.3d 1189, 1194 (10th Cir.2011). Under *McDonnell Douglas,* a three-step analysis requires the plaintiff first prove a prima facie case of discrimination. *See Garrett v. Hewlett–Packard Co.,* 305 F.3d 1210, 1216 (10th Cir.2002). To set forth a prima facie case of discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *See Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 531 (10th Cir.1998). The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *See Garrett,* 305 F.3d at 1216. If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext. *Id.*

*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  The parties appear to agree that the *McDonnell-Douglas* burden shifting framework applies to both the Title VII and New Mexico Human Rights Act discrimination and retaliation claims.  ***See, e.g.,* Doc. 122 at 17.**  Therefore, the Court will assume that the standards are the similar.  *See Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F. Supp. 3d 1107, 1118 (D.N.M. 2015) ("This Court's analysis is identical under the NMHRA because New Mexico has largely adopted federal Title VII and ADEA analysis for the purposes of interpreting the NMHRA."), *citing Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1249 (D.N.M. 2013) (Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in *McDonnell Douglas Corp. v. Green* "[w]hen

19

considering a violation of the NMHRA."); *Juneau v. Intel Corp.,* 2006–NMSC–002, ¶ 9, 139 N.M. 12, 127 P.3d 548 (applying *McDonnell Douglas* burden-shifting framework to NMHRA claims).

The Court assumes Plaintiff asserted a *prima facie* case of discrimination and retaliation. Plaintiff appears to argue that internal affairs investigation constituted the same adverse employment action for both this discrimination and retaliation claims. Therefore, the remaining prongs of *McDonnell-Douglas* overlap for the retaliation and discrimination claims.

As explained above, Defendants clearly asserted a legitimate, non-discriminatory business reason for removing him from his teaching position. Plaintiff was teaching inappropriate topics to trainees, such as his own personal ethics and views on women. When confronted, Plaintiff did not acknowledge that he was doing something wrong or agree he would change his ways. Moreover, his teaching was offensive to some of his trainees and cadets.

Moreover, for the same reasons as above, Plaintiff failed to rebut Defendants' proffered reason as pretextual or otherwise inadequate. "A pretext argument requires the court to examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) (internal quotation marks and citations omitted). "The plaintiff may establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (internal quotation marks omitted). Thus, the Court does not determine whether the Defendants' decisions were correct, rather only "whether the employer honestly believed its reasons and acted in good faith upon them." *Berry v. T-Mobile*

20

*USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007).  Evidence of pretext often includes: (1) evidence that defendant's stated reason was false; (2) evidence that Defendant was acting contrary to company policy; and (3) evidence that Plaintiff was treated differently from similarly situated employees.  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307–08 (10th Cir. 2017).

For the reasons stated above, Defendants' employment decisions were reasonable and amply supported in the record.  Even assuming Defendants were wrong in their conclusion, that does not necessarily establish that their reasons for disciplining Plaintiff were pretextual.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000), *citing McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998) (finding that plaintiff failed to establish pretext where the defendant discharged plaintiff after conducting an investigation into a subordinate employee's allegations of sexual misconduct and believed the allegations to be true, even though plaintiff presented evidence to the district court that the allegations may have been false).  Rather, at issue is the sincerity of the employer's proffered belief for the discipline.  *See Berry v. T-Mobile USA, Inc.,* 490 F.3d 1211, 1220 (10th Cir. 2007) ("[A]t issue is whether the evidence of Plaintiff's misconduct presented to [the decisionmakers] was so weak that a rational factfinder could infer that [the] expressed reason for terminating Plaintiff must have been pretextual.") (internal quotation marks omitted).

As explained above, the record clearly reflects that Defendants believed the results of the internal affairs investigation and the investigation was thoroughly conducted.  Defendants' employment decision were reasonable and amply supported in the record.

## IV.   <u>Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Counts XI and XII)</u>.

Plaintiff alleges that the City of Farmington breached an implied contract and the implied covenant of good faith and fair dealing. Plaintiff argues that Chief Hebbe deprived him of his right to contest the internal affairs investigation through a grievance committee.

Initially, Defendant City of Farmington argues it has immunity as to any implied contract claim pursuant to NMSA § 37-1-23(A).  The Court disagrees.  New Mexico has granted governmental entities immunity as follows:

> A. Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract.

N.M. Stat. Ann. § 37-1-23(A).  An implied employment contract based on a written personnel manual may be a "valid written contract" for which immunity is waived.  *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 20, 121 N.M. 728, 734, 918 P.2d 7, 13. Moreover, NMSA § 37-1-23(A) does not apply to cities. *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d at 12 n.2.  Therefore, Plaintiff's implied contract claim does not appear to be barred by NMSA § 37-1-23.

Plaintiff asserts that the personnel manual or rules create an implied contract.  In New Mexico, "a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (internal citation omitted). "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4, 115 N.M. 665, 857 P.2d at 783. If the alleged employer's promise is not sufficiently explicit, courts will not find an implied contract. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d at 780.

As Defendants argue, Plaintiff failed to show how Defendant City of Farmington breached a term of the implied contract by violating its own rules. *See* **Doc. 107 at 23; Doc. 122 at 18-20.** Plaintiff initially argues that a breach of contract claim cannot be resolved at the summary judgment stage. However, at this stage, Plaintiff is required to present some evidence such that a reasonable jury could rule in his favor.

On November 29, 2016, Plaintiff filed a grievance with Lt. Baric Crum objecting to the internal affairs report. **Doc. 117-2 at 1, Ex. 13.** On December 7, 2016 Chief Hebbe responded to Plaintiff's grievance in a memo, in which he reviewed and affirmed the results of the internal affairs investigation. He opined that the requests are not "grievable" under the Farmington City Code, Article 10, Section 21-10-1. **Doc. 117-2 at 7-9, Ex. 14.**

Plaintiff filed a request for the grievance committee to review and make a decision in the "grievability" of his grievance. **Doc. 117-2 at 10, Ex. 15.** The grievance committee concluded that his grievance was "grievable." **Doc. 117-2 at 16.**

Section 21-10-4 of the Farmington City Code states that "a grievance is a written, formal complaint by an eligible employee." Sec. 21-10-4(a). "A grievance may not pertain to any disciplinary action other than a written reprimand." *Id* at 4(b). Section 21-10-5 sets forth the grievance process. *See* **Doc. 117-2 at 19-20.**

The grievance was allowed by the "grievability committee" pursuant to Section 21-10-5(3), (4), which meant Chief Hebbe had seven days to respond to the grievance. Section 21-10-5(4). Chief Hebbe responded as required by the procedures and reduced the discipline from a written reprimand to a counseling. Chief Hebbe left in place other disciplinary measures, including the decision to strip Plaintiff of his specialty positions. Plaintiff was allowed to reapply for specialty positions after a year.

23

It is unclear how Chief Hebbe violated the procedures set forth in the city personnel rules. Plaintiff has not pointed to anything in the City of Farmington personnel rules or record prohibiting Chief Hebbe from reducing the discipline from a written reprimand to a counseling.  Plaintiff has also pointed to nothing that prohibits Chief Hebbe from stripping his specialty positions for one year.  *See generally* **Doc. 117 at 23-24.**  There is nothing in the personnel rules that prohibits a department head from responding to a grievance by reducing the original discipline.  Therefore, either the contract was not sufficiently specific to form an implied contract, *Hartbarger v. Frank Paxton Co*., 857 P.2d at 780, or Chief Hebbe did not breach the personnel rules.

To the extent Plaintiff argues that Defendants breached the personnel rules by discriminating or retaliating against him, the Court rejects that argument for the same reasons discussed above.

Moreover, Plaintiff has failed to show that the City of Farmington acted in bad faith or intentionally used the contract to the detriment of Plaintiff.

Therefore, Plaintiff has not produced any evidence on which a reasonable jury could find that a breach of contract or a violation of the covenant of good faith and fair dealing occurred.

## CONCLUSION

For the reasons stated above, there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law as to Plaintiff Reyes Flores' claims. Therefore, Plaintiff Reyes Flores' remaining claims are dismissed.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment against Reyes Flores **(Doc. 107)** is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

A separate judgment will be issued.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**